IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REBECCA CAMPBELL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DREXEL UNIVERSITY, LEWIS BENNETT,** | : | |
| **FERNE COHEN, TARA HAFYCZ,** | : | |
| **ANESTHESIA SERVICES, P.A. and** | : | |
| **CHRISTIANACARE HEALTH SYSTEM,** | : | |
| **INC.** | : | **NO. 24-192** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                                   **June 3, 2025**

Drexel University dismissed plaintiff Rebeca Campbell from its Certified Registered Nurse Anesthetist Program while she was pregnant and completing her clinical hours with Anesthesia Services, PA ("ASPA") at Christiana Hospital. She claims the defendants applied tougher disciplinary standards to her than they did to non-pregnant students in violation of Title IX of the Education Amendments, Title VII, and the Pennsylvania Humans Relations Act. She also claims disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act based on their disciplining her for using her cell phone in the operating room after having granted her request to use it to check her blood-sugar level. She sued Drexel; ASPA; Christiana Care Health System, Inc., owner of the hospital where she did her clinical; Lewis Bennett, Chair of Drexel University's Nurse Anesthesia program; Ferne Cohen, Clinical Chair of Drexel University's Nurse Anesthesia program; and Tara Hafycz, a Clinical Educator in Drexel University's Nurse Anesthesia program.[1]

Moving for summary judgment, ASPA argues that the undisputed facts show it is not an educational institution receiving federal financial assistance subject to Title IX, and

it was not Campbell's employer under Title VII and the ADA. It also contends Campbell cannot make out a *prima facie* case of gender or disability discrimination because there are no facts to support an inference of discrimination and no genuine issue of material fact showing that it took any adverse employment action.

After reviewing the record in the light most favorable to Campbell and drawing all reasonable inferences in her favor, we conclude that ASPA is not an educational institution receiving federal assistance under Title IX and it was not Campbell's employer under Title VII. Nor did ASPA deny her a reasonable accommodation. Therefore, we shall grant ASPA's motion for summary judgment.

## Background

Drexel University offers a Nurse Anesthesia Program that awards a master's degree. The program is purposed to qualify for Board certification as a Certified Registered Nurse Anesthetist. It is comprised of didactic teaching and clinical experience. The teaching component is provided at Drexel where courses are taught by Drexel professors consistent with a curriculum mandated and regulated by Drexel.

Because Drexel does not operate a hospital, it contracts with private anesthesia providers at hospitals to oversee students in the clinical phase of Drexel's program within the parameters fixed by Drexel. One of those providers is ASPA.

Campbell enrolled in Drexel's Nurse Anesthesia program in January 2021.[2] She was assigned to ASPA to complete her clinical rotations, which she began in March 2021.[3]

During her time at ASPA, Campbell made numerous errors. She failed several times to properly document narcotics used and administered the wrong drugs during procedures.

Students and staff at the hospital are issued fanny packs which contain a fixed amount of narcotics dispensed by the pharmacy. Each pack includes a blue piece of paper called a "blue sheet." The blue sheet documents how much narcotics were received, used and returned. A "fanny pack error" is an error or discrepancy between the blue sheet and the actual narcotics dispensed.[4]

On January 20, 2022, Campbell committed a fanny pack error when she failed to sign documentation accounting for allotted medication.[5] On February 17, 2022, she failed to properly document the use of medication.[6] On April 13, 2022, she had the wrong drugs in her fanny pack.[7]

In early April, 2022, Campbell performed a procedure under the supervision of CRNA Barb Evans.[8] Evans noted several areas on Campbell's Evaluation Form as "Needs Improvement."[9] Campbell claims the negative evaluation that she was too quiet that day was because she was suffering from pregnancy-related laryngitis.[10]

On April 14, 2022, CRNA Marshall Colbert noted on Campbell's Evaluation Form that she "Needs Improvement" in several areas. He reported that she labeled medication incorrectly, infused incorrect medications, and "appeared apathetic to cardiac anesthesia" during a cardiac procedure.[11]

On April 26, 2022, Drexel issued a Clinical Warning to Campbell.[12] A clinical warning is issued to a student who is not performing adequately.[13] A warning is in effect for three weeks, at the end of which the Director of Clinical Education decides whether to

remove the warning or place the student on clinical probation for seven additional weeks.[14]

In late April, 2022, Campbell committed her fourth fanny pack error when she recorded incorrect drug totals on a blue sheet.[15] As a result, Drexel extended her Clinical Warning.[16] She was required to develop an action plan to address the documented problems.

On July 14, 2022, Campbell used her cell phone in an operating room.[17] Four days later, Drexel issued her a Clinical Alert for the cell phone use.[18] Campbell contends it was to check her blood sugar. ASPA says it was much more.

On July 22, 2022, Campbell assisted in an operating room supervised by Dr. Santi.[19] After Campbell signed off, it was discovered that the patient had been receiving incorrect amounts of lidocaine and magnesium.[20] The parties dispute the cause of the error and whether Campbell was responsible.

On August 23, 2022, ASPA requested that Drexel remove Campbell from the Christiana Care site.[21] It cited improper documentation of narcotics, administering incorrect doses of drugs, and failure to adhere to best practices. Drexel denied Campbell's request to be assigned to another location. Instead, it dismissed her from the program.

**Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate

burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 592 (3d Cir. 2018).

In examining a motion for summary judgment, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (citing *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Revock v. Cowpet Bay W. Condo. Ass'n,* 853 F.3d 96, 112 (3d Cir. 2017) (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993)). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI),* 822 F.3d 125, 135–36 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

### Discussion[22]

*Title IX – Education Program*

Title IX of the Education Amendments of 1972 bars discrimination on the basis of sex in any education program or activity receiving federal financial assistance.[23]  20 U.S.C. § 1681(a).  Thus, for liability to attach under Title IX, the defendant must operate an educational program or activity, and it must be a recipient of federal financial assistance.

5

We must determine whether ASPA's clinical program, a part of Drexel's CRNA curriculum, is an "education program or activity."  If it is, we must then decide whether ASPA receives qualifying federal financial assistance.

Whether a program or activity is educational under Title IX is a mixed question of law and fact.  When the facts are uncontested, the issue can be decided on summary judgment.  When there are material factual disputes, the question is for the finder of fact.  Here, the facts relevant to the Title IX issue are not in dispute.

What constitutes an education program or activity is not defined in the statute.  In the absence of a statutory definition, the Third Circuit has determined that an "education program or activity" under Title IX is one that has "features such that one could reasonably consider its mission to be, at least in part, educational."  *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 555 (3d Cir. 2017) (citing *O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997)); 20 U.S.C. § 1687.  Features of an educational mission are: (1) the program is incrementally structured through a particular course of study or training, whether full- or part-time; (2) it allows a participant to earn a degree, qualify for a certification, or pursue a specific job and is more than on-the-job training; (3) it provides instructors, examinations, an evaluation process or grades, or accepts tuition; or (4) it is held out as educational by accreditation or regulatory entities.  *Mercy*, 850 F.3d at 556.  *See also O'Connor*, 126 F.3d at 117-18.

The presence of one or more of these features does not necessarily render the mission educational under Title IX.  The relevance of these non-exhaustive characteristics depends on the circumstances of each case.  *Mercy*, 850 F.3d at 556.

The plaintiff in *Mercy* brought a claim of sex discrimination for sexual harassment and retaliation. Mercy moved to dismiss the complaint, arguing that it was not an educational program or activity under Title IX.

The *Mercy* court held that Doe had sufficiently alleged facts showing that the residency program made "[Mercy's] mission, at least in part, educational under Title IX." *Id.* at 557. The allegations described the features of the medical residency program. Mercy was a private teaching hospital operating a residency program. The program combined "hands-on experience with didactic teaching." *Id.* at 550. The medical residency program at Mercy was a "multiyear regulated program of study and training." *Id.* at 556. It was both didactic and clinical. *Id.* at 550. Participants were required to study under faculty members and physicians, attend lectures, participate in classes, and sit for examinations. *Id.* Completion of the residency program qualified participants to sit for certification examinations. *Id.* Lastly, the hospital held out its residency program as educational in nature and the Accreditation Council for Graduate Medical Education, the relevant certifying agency, considered residency programs "structured educational experience[s]." *Id.* at 557.

The Drexel clinical phase at ASPA is substantively different than the Mercy medical residency program. ASPA does not have its own education program. It provides a clinical experience, not a didactic one, as a part of Drexel's program. Drexel provides the didactic teaching, administers examinations, and grades students. Its educational program leads to a degree and qualifies students to apply for certification as a CRNA.

What participants must do at ASPA is dictated by Drexel and is not left to ASPA.[24] The ASPA clinical is not incrementally structured. A participant does not progress from

7

one step to a more advanced step. The participant spends a specific time in each specialty area without regard to performance.

Campbell claims ASPA is a regulated program of study because it assigns students to different rotations throughout their time there, including pediatric and cardiac procedures.[25] ASPA does not regulate the clinical phase. Drexel dictates the areas and the time spent in each.

Campbell also claims ASPA is an educational program because ASPA interviewed her and reviewed her application.[26] It has limited control over the placement of Drexel students. It has to choose from a pool of students selected by Drexel. ASPA interviews and selects students from that pool.[27] In any event, interviewing her and reviewing her application does not show that ASPA was operating an educational program or activity.

ASPA does not provide instructors or administer examinations. It does not grade the Drexel student. It submits daily evaluation forms which are check lists provided by Drexel. The forms are used by Drexel to monitor the student's progress.

ASPA does not receive tuition from the interns. Drexel does. That Drexel compensates ASPA does not transform that payment into tuition.

No accreditation or regulatory entity holds ASPA out as having an educational program. Nor does ASPA hold itself out as an educational provider or institution. The internship provides clinical experience with an anesthesia group as part of Drexel's CRNA program. Campbell was a Drexel student, not an ASPA student. She remained a Drexel student throughout her clinical experience at ASPA.

Campbell claims that the training she received at ASPA was necessary to become licensed. That is true. Clinical training was a prerequisite to her certification. Completion

of a minimum number of hours of clinical experience is a prerequisite to qualify for CRNA certification by the COA. But, the experience is dictated and monitored by Drexel as part of its program. The CRNA program of which the clinical is a part was Drexel's, not ASPA's.[28]

Campbell contends Drexel and ASPA are affiliated because some staff hold positions at both Drexel and ASPA. Drexel pays ASPA to take a set number of students for a defined number of clinical hours there. Their agreement expressly states it does not establish a partnership.[29] An agreement limited to a discrete area, in this case paying ASPA to allow students to complete their clinical hours, does not constitute an "institutional affiliation." *See O'Connor*, 129 F.3d at 118.

The ASPA internship has some features of an educational program. But, those features are not sufficient to establish that ASPA's mission, "at least in part," is educational. ASPA is akin to a third party vendor providing services to Drexel for payment. It provided Drexel with a place for Drexel students to gain clinical experience under the observation and guidance of ASPA practitioners. Although the guidance suggests an educational component, that alone does not make ASPA's mission educational.

As the *Mercy* court advised, the presence of one or more of the features of an educational program does not always make the program educational. The court made clear that the relevance of each factor depends on the circumstances. With this guidance in mind, we conclude that ASPA is not an educational program for purposes of Title IX.

Even if ASPA is deemed to operate an educational program, it does not receive qualifying federal financial assistance. "Federal financial assistance" is not defined in the

statute. The regulations define it as aid "authorized or extended under a law administered by the Department [of Education]." 34 C.F.R. § 106.2. The aid must bear a relationship to the recipient's educational mission. Thus, the qualifying financial assistance must be tied to aid to education administered by the Department of Education.

Campbell contends that Medicare and Medicaid payments received by ASPA satisfy the federal financial assistance requirement of Title IX. Medicare and Medicaid are not administered or authorized by the Department of Education. Medicare and Medicaid payments are for medical services provided to beneficiaries of those programs. They are not qualifying federal financial assistance for educational services.[30]

The internship at ASPA is not an educational program or activity within the scope of Title IX. It is not a part of ASPA's mission. Nor does ASPA receive qualifying federal financial assistance. Therefore, because it is not subject to Title IX, ASPA is entitled to summary judgment on the Title IX claim.

### Title VII – Employer-Employee Relationship

Title VII and the PHRA prohibit discrimination arising in an employment relationship.[31][32] *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). Accordingly, a plaintiff claiming discrimination must have an employment relationship with the defendant.

An employment relationship exists where the entity pays the individual, has the ability to hire and fire her, and has control over her daily employment activities. *Id.* (citing *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 323 (1992)); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015). The Third Circuit has generally focused on what entity paid and hired and fired the employees. *Faush*, 808

F.3d at 214. However, a court must consider all of the factors of the relationship, "with no one factor being decisive." *Id.* Those factors are "the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; … whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Faush*, 808 F.3d at 215.

In a remarkably similar case, the Third Circuit held that the plaintiff was not an employee because he was not paid, he obtained his internship through his school and not through an independent application, and he was informed of his termination through his school and not his internship placement. *Payne v. Prevention Point Philadelphia*, No. 21-2173, 2022 WL 796184, at *2 (3d Cir. 2022). The court also considered that Payne's internship was governed by the agreement between his school and his placement, his internship was crafted to inform his coursework, and the school staff coordinated his internship with the placement staff. *Id.* at *3. As we have seen in our analysis of the Title IX issue, all of these factors are present in this case.

Some aspects of Campbell's relationship with ASPA are typical of an employment relationship. ASPA had some control over Campbell's daily work. ASPA oversaw her during her shifts and contacted her to cover shifts.[33] Campbell performed work that was part of ASPA's regular business at a location where ASPA regularly provided services.[34]

In determining whether she had an employment relationship, it is what ASPA did not do, not what it did, that is significant. ASPA did not dictate the requirements of

11

Campbell's clinical experience.  ASPA did not determine the length of time of the clinical phase nor the rotations Campbell had to complete.  It could not assign her any work beyond the parameters set by Drexel.

Campbell was not hired by ASPA.  It did not pay her.  Drexel facilitated her placement with ASPA.  She did not independently apply to ASPA.  The internship was specifically crafted by Drexel to satisfy a component of its CRNA program.  The clinical term was set by Drexel.[35]  Drexel, not ASPA, informed her she was removed from the clinical site and dismissed her from the program.  These factors demonstrate that Campbell was not an ASPA employee.  Therefore, because there was no employment relationship, we shall grant ASPA's motion for summary judgment on the Title VII and PHRA claims.[36]

### Discrimination (ADA & RA)

To prove disability discrimination under the ADA, Campbell must show that she has a disability, is a qualified individual, and has suffered an adverse action because of her disability.  *See Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).  Claims under the Rehabilitation Act ("RA") are analyzed under the same rubric.  *See McDonald v. Com. of Pa., Dep't of Public Welfare, Polk Center*, 62 F.3d 92, 94-95 (3d Cir. 1995).

Although pregnancy is not a disability, pregnancy-related complications may be. *Donnelly v. Cap. Vision Servs., LLC*, 644 F. Supp. 3d 97, 109 (E.D. Pa. 2022); *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 344 (M.D. Pa. 2015), *aff'd,* 660 F. App'x 149 (3d Cir. 2016) (internal citations omitted).  Campbell had two pregnancy-related disabilities – laryngitis and gestational diabetes.  She admits she did not need an accommodation for laryngitis.[37]  The parties agree that she requested an accommodation

12

for her gestational diabetes to use her phone to monitor her blood sugar levels and ASPA gave her permission to do so.[38]

ASPA did not deny her a reasonable accommodation. Nor did it discipline her. Drexel did. Campbell concedes that ASPA gave her the accommodation she requested. She complains that ASPA reported to Drexel that she had used her phone in the operating room. That report, she contends, was "false and misleading."[39] If proven, the false report might support some other cause of action, but it does not support an ADA cause of action. Aside from the lack of an employment relationship with ASPA, Campbell has not established that ASPA denied her a reasonable accommodation for her pregnancy related disability. Therefore, ASPA is entitled to summary judgment on the ADA and RA claims.

## Conclusion

The undisputed facts establish that ASPA is not subject to Title IX, Title VII, or the PHRA. There is no evidence that ASPA denied Campbell a reasonable accommodation in violation of the ADA or RA. Therefore, we shall grant ASPA's motion for summary judgment.

---

[1] We granted Christiana Health Care System's motion to dismiss, and denied Drexel's motion for summary judgment.

[2] Concise Statement of Undisputed Material Facts ¶ 10, ECF No. 50-3 ["DSUF"] (attached to Def.'s Mot. for Summ. J., ECF No. 50); Pl.'s Resp. to Def. Anesthesia Services, P.A.'s Concise Statement of Undisputed Material Facts ¶ 10, ECF No. 58 ["PRDSUF"].

[3] DSUF ¶¶ 4, 14; PRDSUF ¶¶ 4, 14.

[4] *See* Plaintiff Rebecca Campbell's Statement of Facts in Opposition to Defendants' Motions for Summary Judgment ¶ 60, ECF No. 58-2 ("PSOF").

[5] DSUF ¶ 26; PRDSUF ¶ 26.

[6] DSUF ¶ 27; PRDSUF ¶ 27; Oral Argument Tr., ["Tr."] Apr. 22, 2025, 41:10-13.

[7] DSUF ¶ 30; PRDSUF ¶ 30.

[8] DSUF ¶ 28; PRDSUF ¶ 28.

---

[9] DSUF ¶ 29; PRDSUF ¶ 29.

[10] PSOF ¶ 51.

[11] DSUF ¶ 31; PRDSUF ¶ 31.

[12] DSUF ¶ 33; PRDSUF ¶ 33.

[13] MSN Program Student Handbook 93, ECF No. 58-18 ["Handbook"] (attached as Ex. 17 to Pl. Rebecca Campbell's Br. in Opp'n. to the Mot. for Summ. J. of Def. Anesthesia Services, P.A., ECF No. 58-1 ["Pl.'s Br."]).

[14] *Id.*

[15] DSUF ¶ 34; PRDSUF ¶ 34.

[16] DSUF ¶ 35; PRDSUF ¶ 35.

[17] DSUF ¶ 36; PRDSUF ¶ 36.

[18] DSUF ¶ 37; PRDSUF ¶ 37.

[19] DSUF ¶ 38; PRDSUF ¶ 38.

[20] DSUF ¶ 42; PRDSUF ¶ 42.

[21] DSUF ¶ 46; PRDSUF ¶ 46.

[22] Campbell withdrew her Pennsylvania Fair Educational Opportunities Act and hostile work environment claims as to ASPA.  Pl's. Br. 16.

[23] Discrimination based on pregnancy is sexual discrimination.  *Pfeiffer by Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 784 (3d Cir. 1990).

[24] Deposition of Tara Hafycz 42:19-20, ECF No. 50-8 ["Hafycz Dep."] (attached as Ex. 4 to Def.'s Mot. for Summ. J.) ("The clinical time is determined by the schools.").

[25] *Id.* 13:19-23; 15:4-10 ("The COA [Council on Accreditation of Nurse Anesthesia Educational Programs] has requirements for case types and skills that they must complete clinically.").

[26] "We note first that Title IX's application turns primarily on whether *the defendant-entity's* questioned program or activity has educational characteristics. *The plaintiff's* characteristics—for example, whether she's a student, employee, or something else—may be relevant in some cases, but they aren't necessarily dispositive."  *Mercy*, 850 F.3d at 556.

[27] Deposition of Dena Lavender 30:13-24, ECF No. 50-9 (attached as Ex. 5 to Def.'s Mot. for Summ. J.); Deposition of Mark Loftus 9:7-9, 40:1-2, ECF No. 50-7 ["Loftus Dep."] (attached as Ex. 3 to Def.'s Mot. for Summ. J.).

[28] *See* Compl. ¶ 7, ECF No. 1.

[29] Mem. of Understanding 2, ECF 24-1.

[30] Section 1687 makes it clear that if any part of a private or public entity receives federal financial assistance, the entire operation is subject to Title IX, not just its educational division.  For purposes of this case, it provides that if any part of a private organization is "principally engaged in the business of providing education" receives any federal financial assistance, the entire operation is subject to Title IX.  20 U.S.C. § 1687(3)(A)(ii).  Because ASPA is not a part of Drexel nor is Drexel a part of ASPA, this statutory provision does not apply.

[31] PHRA claims are analyzed under the same framework as Title VII claims.  *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002).

[32] Discrimination based on pregnancy is discrimination on the basis of sex for purposes of a Title VII claim.  *See Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 506 (3d Cir. 1996); *May v. PNC Bank*, 434 F. Supp. 3d 284, 299 (E.D. Pa. 2020).

---

[33] Compl. ¶¶ 236-38, 242.

[34] Compl. ¶ 239.

[35] Hafycz Dep., 42:19-20

[36] Alternatively, Campbell claims that under Title VII even a volunteer can be considered an employee if she receives benefits such as a pension, group life insurance, workers' compensation, and access to professional certification, or if the volunteer work "is required prior to employment, or commonly leads to regular employment." Numerous courts have held that unpaid volunteers are not "employees" for purposes of Title VII. *See e.g., York v. Ass'n of Bar of City of New York*, 286 F.3d 122 (2d Cir. 2002) (attorney working as an unpaid volunteer was not an "employee" of the bar association for Title VII purposes); *Payne v. Prevention Point Philadelphia, Inc.*, No. CV 20-4444, 2021 WL 2414606, at *1 (E.D. Pa. June 14, 2021), *aff'd,* No. 21-2173, 2022 WL 796184 (3d Cir. Mar. 15, 2022) (unpaid intern not an "employee" under Title VII); *McCabe v. Mutual Aid Ambulance Serv., Inc.*, No. 2:15-CV-00562-TFM, 2015 WL 4715260, at *5 (W.D. Pa. Aug. 7, 2015) (unpaid volunteer board member was not an employee under Title VII); *Day v. Jeannette Baseball Ass'n*, No. CIV.A. 12-267, 2013 WL 5786457 (W.D. Pa. Oct. 28, 2013) (volunteer baseball coach was not an "employee" protected by Title VII); *Hall v. Delaware Council on Crime and Justice*, 780 F.Supp. 241, 244 (D. Del. 1992) (finding that reimbursement for work-related expenses did not qualify as compensation to raise volunteer's status to an employee for purposes of Title VII protection).

[37] Pl.'s Br. 34.

[38] ASPA claims she used her cell phone for more than checking her blood sugar, such as texting, and was distracted during procedures by her phone. Loftus, who was supervising her at the time, testified that she was distracted and texting. Loftus Dep. 64:9-12, 75:21-77:8. This disputed fact does not affect our conclusion.

[39] Pl.'s Br. 33.